IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| GERRY DALTON, | : | |
| Plaintiff, | : | |
| | | Case No. 3:13cv00051 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.   Introduction

Plaintiff Gerry Dalton ("Plaintiff") sought financial assistance from the Social Security Administration by protectively applying for Disability Insurance Benefits ("DIB") on September 14, 2009, alleging disability beginning September 4, 2009. (*PageID##* 143-144).  He claims disability because he is "in constant pain. [Has] trouble walking, sitting or standing for any length of time.  Can't [d]o any lifting.  Can't concentrate on what [he is] doing due to pain."  (*PageID#* 162).

After various administrative proceedings, Administrative Law Judge ("ALJ") Beverly Susler Parkhurst denied Plaintiff's application for DIB based on her conclusion

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act. (*PageID##* 46-55). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. § 405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Response in Opposition (Doc. #13), Plaintiff's Reply (Doc. # 14), the administrative record (Doc. # 6), and the record as a whole.

II.     **Background**

    A.     **Plaintiff's Vocational Profile and Testimony**

Plaintiff was 53 years old at the time of the hearing on July 18, 2011, which defined him as a "person closely approaching advanced age" for purposes of resolving his DIB claim. *See* 20 C.F.R. § 404.1563(e); *see also PageID##* 53, 75, 143. Plaintiff is a high school graduate, (*PageID##* 68, 48), and has worked as an auto-mechanic and heavy auto-mechanic. (*PageID##* 53, 104).

Plaintiff currently lives in a house with his adult daughter. (*PageID#* 75). Plaintiff testified he takes care of the home, but his daughter helps with laundry and will run the weed whacker around the yard. (*Id.*). Plaintiff is approximately 5' 11" and weighs 225 pounds. (*PageID#* 76). He served in the U.S. Army from 1977 to 1981 and was honorably discharged. (*Id.*).

Plaintiff testified that he used to work as a service technician at an auto repair shop and then worked for Airborne Express. (*PageID#* 65). His work included diagnosing and repairing heavy equipment, small automotive equipment, and airport ground equipment. (*Id.*). He had to lift anywhere from 50 to 80 pounds. (*Id.*). He also had to bend and lift often. (*Id.*).

Plaintiff testified he drove 12 miles to the hearing. (*PageID#* 66). He testified he drives every week, and goes to the grocery store. (*Id.*). Plaintiff stated he stopped working, "because I had severe back pain and my doctor told me that I shouldn't be working and I kept on working. And of course I reinjured my back as a result." (*Id.*). He collected unemployment but stated he did not look for any work because, "I was unable to work." (*PageID#* 68). Plaintiff believes there is no job he can do because he is "in pain all the time." (*Id.*). He takes 400 or 500 milligrams of Vicodin per day, as well as blood pressure pills. (*PageID#* 69). Plaintiff has been taking Vicodin for "four or five years," and admits to taking them while he was still working as a mechanic. (*Id.*).

Plaintiff does minimal exercising at home. (*PageID#* 70). Plaintiff previously had surgery on his back and stated that he ended up with a lot of scar tissue. (*PagID#* 70). He was told he needed to have additional surgery but declined to do so because it scared him "to death." (*PageID#* 71). He stated he just dealt with the pain. (*Id.*).

Plaintiff estimated that he can lift 10 to 20 pounds currently. (*Id.*). He later stated he believes he could not lift more than two gallons of milk without hurting his back. (*PageID#* 81). He stated he walks with a limp and can barely walk a block. (*PageID#*

3

71). Plaintiff testified he can stand for "probably about a half an hour." (*PageID#* 72). He stated he can only sit for approximately 10 or 15 minutes at a time. (*Id.*). He spends most of his days "sitting in a recliner." (*PageID#* 72).

Plaintiff testified that after he takes his Vicodin, his pain is at a 7 out of 10. (*PageID#* 73). He states this is just enough to take the "edge off" of the pain. (*PageID#* 77). He stated he experiences confusion, dizziness, and mood changes from the Vicodin. He stated the pain in his right leg "feels like a nerve pain. . . it's kind of like a toothache 24/7 . . . Like a rubber band in my leg and it's about ready to break." (*PageID#* 79). He stated that when he was standing during the hearing his back and feet started to hurt, which is why he sat down again. (*PageID#* 83).

      **B.**     **Medical Expert Testimony**

A Medical Expert (ME), Dr. Ashok Jilhewar, also testified at the hearing. (*PageID#* 84). Dr. Jilhewar stated he reviewed the medical evidence in the file through Exhibit 20F. (*Id.*). Dr. Jilhewar concluded there was no longer any stenosis in Plaintiff's back because he had a laminectomy. (*Id.*). He also stated the clinical findings are more important than the etiological findings. (*PageID#* 87). Dr. Jilhewar opined that the only clinical finding he believed critical to this case was Plaintiff's cardiac stress test, which he stated was normal except for the symptom of pain. (*Id.*).

Dr. Jilhewar opined that Plaintiff – when taking into account his pain and narcotic medication – would be limited to "so-called sedentary capacity, not meeting or equaling listing 1.04." (*PageID#* 89). He also stated he agrees with the DDS opinion that Plaintiff

is capable of light work (Ex. 6F), but only "based on objective evidence alone." (*PageID#* 92).

### C. Vocational Expert Testimony

A Vocational Expert (VE) also testified at the administrative hearing. (*PageID##* 107-116). The VE testified that a hypothetical individual with Plaintiff's age, education, and work experience could not return to Plaintiff's past work because it is classified as medium and heavy. The VE stated, however, that such a hypothetical individual could perform light work, such as correlator operator (985 jobs in Ohio, 51,000 nationally), routing clerk (932 jobs in Ohio, 449,000 nationally), and mail clerk, except government services (900 jobs in Ohio, 32,000 nationally). (*PageID#* 107-08). The VE further testified that his testimony is consistent with the *Dictionary of Occupational Titles* ("DOT"). (*PageID#* 108.)

The VE testified there would be jobs available for a hypothetical individual, who is the same age as Plaintiff but could only work at the sedentary level, stand for 2 out of 8 hours, and sit for 6 out of 8 hours. (*PageID#* 109). The VE testified such jobs include surveillance system monitor (723 jobs in Ohio, 19,500 nationally), and document preparer (840 jobs in Ohio, 32,000 nationally). (*Id.*).

The VE testified that if the hypothetical individual was unable to maintain the pace and productivity expectations of the jobs identified, such a person would eventually be terminated. (*PageID#* 112).

### D. Relevant Medical Treatment and Opinions

5

Plaintiff has a long history of back pain that became more severe around June 2007.  (*PageID#* 400).  In July 2007, Plaintiff began treatment with a pain management specialist, James A. Bruce, M.D.  (*PageID##* 310-12).  A lumbar MRI was subsequently performed on July 14, 2007.  (*PageID#* 296).  The MRI indicated disc protrusions at L4-L5 and L5-S1 with associated nerve root effacement, as well as mild facet hypertrophy at L4-L5 and L5-S1.  (*Id.*).  After a series of lumbar epidural steroid injections through September 2007 failed to relieve Plaintiff's back pain, he had a surgical consultation with Philip Minella, M.D.  (*PageID##* 322-23).

On November 5, 2007, Dr. Minella performed a microlumbar discectomy at the L4-L5 and L5-S1 levels of Plaintiff's spine.  (*PageID##* 326-27).  A post-surgical lumbar MRI was performed on January 12, 2008, which indicated scar tissue was developing in the lateral recesses of L4-L5 and L5-S1.  (*PageID#* 295).  Also shown was a recurrent disc protrusion at L4-L5.  (*Id.*).

Plaintiff underwent additional epidural steroid injections.  (*PageID#* 331-33, 335, 341-46).  Plaintiff later treated with Alfred Kahn, III, M.D., for his pain management.  (*PageID#* 215).  Dr. Kahn diagnosed Plaintiff with "failed back syndrome" caused likely by scarring.  (*Id.*).  Plaintiff underwent three steroid injections with Dr. Kahn but did not report relief.  (*PageID#* 214).

In July 2008, Plaintiff had another consultation with Dr. Minella.  (*PageID#* 354).  Ultimately, Dr. Minella concluded that Plaintiff was "unfortunately . . . going to have to

6

have a lumbar fusion at the lower two levels.  That is a one year recovery with wearing a brace for three months."  (*Id.*).

Plaintiff reported significant back pain to his primary care physician, Reginique Green, M.D, throughout 2008 and 2009.  (*PageID##* 217-24, 230-31, 246-53).  Dr. Green noted muscle spasms, tenderness to lumbar palpitation, joint stiffness/swelling, an antalgic gait, and positive straight leg raise tests on the right.  (*PageID##* 218, 220, 224, 247-48, 252).  She prescribed Plaintiff extra strength Vicodin.  (*PageID#* 221, 238-39).

Plaintiff had a lumbar MRI performed in October 2009.  (*PageID#* 240-41).  The MRI indicated, in part, disc desiccation at L4-L5 and L5-S1; a moderately large herniated nucleous pulposus at L5-S1 causing stenosis; scar tissue, granulation material, or hyper-vascularity at L5-S1; and a questionable near complete cortical defect of the right lamina at L4-L5.  (*Id.*).  There was no central canal stenosis or herniated nucleus pulposus at L4-L5.  (*Id.*).

A State agency medical consultant, W. Jerry McCloud, M.D., completed a residual functional capacity assessment on December 26, 2009.  (*PageID##* 282-289).  Dr. McCloud believed that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently; could sit for 6 hours in an 8-hour workday; could stand or walk for 6 hours in an 8-hour workday; and could push or pull without limitation.  (*PageID#* 283).  He also noted "[a]t FO [Plaintiff] walked slowly, had trouble sitting and standing, had to stand up during interview, walked w/ a slight limp."  (*PageID#* 283).  Dr. McCloud believed Plaintiff could kneel, crouch, and crawl occasionally.  (*PageID#* 284).  Dr. McCloud

believed Plaintiff's "statemetns [sic] about his symptosm [sic] and their functional effects are found to be only partially credible," and that "the itnesity [sic] fo [sic] the symptoms and their impact on functioning are not consistetn [sic] with the totality of the evidence." (*PageID#* 287). Another reviewing consultant, Willa Caldwell, M.D., affirmed this assessment in May 2010. (*PageID#* 290).

An additional MRI was later performed in March 2011 at the Dayton VA Medical Center. (*PageID#* 364-67). The MRI indicated mild disc degeneration and posterior herniation at L4-L5 and L5-S1. (*PageID#* 366). There was minimal postoperative changes, and no evidence of postoperative complications. (*Id.*). On April 20, 2011, Serif Zihni, M.D., an associate of Plaintiff's primary care physician, completed a form regarding Plaintiff's back. Dr. Zihni indicated that Plaintiff had limitation of motion of the spine; motor loss; positive straight leg raising test; severe burning or painful dysesthesia; need to change positions more than once every two hours; lumbar spinal stenosis; chronic nonradicular pain and weakness; and an inability to ambulate effectively. (*PageID#* 360). He also believed that Plaintiff's pain is "severe." (*Id.*).

### III. Administrative Review

#### A. "Disability" Defined

The Social Security Administration provides DIB to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D). The term "disability" – as defined by the Social Security Act – carries a specialized meaning of limited scope. Narrowed to its

8

statutory meaning, a "disability" includes only physical or mental impairments that are "medically determinable" and severe enough to prevent the claimant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70.  A DIB applicant bears the ultimate burden of establishing that he or she is under a "disability."  *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

      B.      **Social Security Regulations**

Administrative regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence.  *See PageID##* 47-48; *see also* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review answers five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can he perform his past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can he or she perform other work available in the national economy?

9

*See* 20 C.F.R. § 404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

  C. <u>**ALJ Parkhurst's Decision**</u>

Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014.  (*PageID#* 48).

At Step 2 of the sequential evaluation, the ALJ concluded that Plaintiff has the severe impairments of coronary artery disease, recurrent disc protrusion and obesity.  (*Id.*).

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the Listings.  (*PageID#* 49).

At Step 4, the ALJ evaluated Plaintiff's RFC and found that he could perform light work, and that Plaintiff is capable of lifting or carrying 20 pounds ocassionally; lifting or carrying 10 pounds frequently; sitting for 6 hours in an 8-hour workday; standing or walking 6 hours in an 8-hour workday; twisting, climbing ramps and stairs, balancing, stooping, crawling, crouching and kneeling up to 1/3 of the day.  (*Id.*).  The Plaintiff was precluded from climbing ladders, ropes, and scaffolds.

The ALJ concluded at Step 4 that Plaintiff was unable to perform any of his past work as an auto-mechanic and heavy auto-mechanic.  (*PageID#* 53).  The ALJ found that – considering Plaintiff's age, education, work experience, and RFC – and based on the VE's testimony, jobs exist in significant numbers in the national economy that Plaintiff can perform.  (*PageID#* 54).

The ALJ's findings throughout her sequential evaluation led her to ultimately conclude that Plaintiff was not under a disability and was therefore not eligible for DIB. (*PageID#* 55).

## IV.    Judicial Review

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir.

2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

V.  **Discussion**

    A.  **The Parties' Contentions**

Plaintiff assigns the following errors in this case: (1) the ALJ erred in her consideration and assignment of weight to the opinion of the testifying medical expert, Dr. Jilhewar; (2) the ALJ failed to properly consider Plaintiff's symptom of pain in appraising his residual functional capacity; (3) the ALJ's credibility finding is neither adequately articulated nor supported by the evidence of record; (4) the ALJ failed to properly consider the opinion of Dr. Zihni; and (5) the ALJ's decision is not supported by substantial evidence and the Commissioner's position is not substantially justified. (*PageID#* 406). Plaintiff contends that "any reasonable correction of these errors overwhelmingly establishes that [he] is limited to sedentary work and entitled to benefits." (*PageID#* 415).

Conversely, the Commissioner argues the ALJ accurately summarized Dr. Jilhewar's testimony, appropriately considered Dr. Zihni's opinion, and properly assessed Plaintiff's credibility. (*PageID##* 432-440). Accordingly, the Commissioner contends

the ALJ's decision to deny Plaintiff benefits is supported by substantial evidence and should be affirmed. (*PageID# 439*).

### B. Medical Expert Dr. Jilhewar's Testimony

An ALJ can properly rely on the testimony of a non-examining medical expert in order to make sense of the record. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001). An ALJ's reliance on the opinion of a non-examining medical expert is proper if the expert's opinion is based on objective reports and opinions. *See Barker v. Shalala*, 40 F.3d 789, 794-95 (6th Cir. 1994); *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1308-09 (6th Cir. 1990).

The ALJ afforded "great weight" to the testimony of medical expert, Dr. Jilhewar. The ALJ noted Dr. Jilhewar's testimony "is consistent with the medical evidence" and that he "cited to objective imaging in the treatment notes and supported his opinion with clinical findings and specific references. (Ex. 1F-5F; 8F-20F)." (*PageID# 53*).

The ALJ summarized Dr. Jilhewar's testimony as follows:

Dr. Jilhewar testified that he fully agreed with the State agency's assessment that the claimant is capable of activities at the light exertional level, with some additional postural limitations. (Ex. 6F). The medical expert opined that this residual functional capacity would accommodate the combination of the claimant impairments and any resulting limitations. The medical expert testified that the claimant may have additional limitations as of February of 2011, but categorized his cardiovascular condition as mild. Dr. Jilhewar testified that the claimant would only be further limited if he experienced significant cardiovascular pain or if the Vicodin causes additional limitations. As there is no treatment or medical management after February of 2011 regarding the claimant's cardiovascular condition, the undersigned finds that there is no objective evidence to support any additional limitations. In addition, the claimant reported that he rarely experiences chest pain. The claimant additionally worked while on Vicodin, so the

13

> undersigned finds that there is no medical evidence to support additional limitations or a reduction to the sedentary exertional level.

(*PageID#* 51). As Plaintiff properly notes, however, "[t]he ALJ's summation misapprehends Dr. Jilhewar's testimony in multiple critical respects." (*PageID#* 407). Most notably, the ALJ incorrectly concluded that "Dr. Jilhewar testified that he fully agreed with the State agency's assessment that the claimant is capable of activities at the light exertional level . . . ." Rather, when asked by the ALJ about his opinion regarding Plaintiff's ability to work, Dr. Jilhewar testified as follows:

> My opinion is that – there are two, actually. The first one is if [we] will accept the symptom of pain, not the impairment, and a solution of the narcotic medication taking first, then he will be limited to so-called sedentary capacity, not meeting or equaling the listing 1.04. He – although [INAUDIBLE] if [we] would not expect the back pain and being significant from their perspective. But then, beginning 02/11/2011, 16F Page 2, because of the treating cardiologist assessment that he cannot do a [INAUDIBLE] test, the pharmacological test, when done, and the pharmacological means, he has the worst developed – the worst perfusion ischemic defect in the inferior – lower part of the wall of the heart. And so, he would be limited to the sedentary capacity as of that date of recommendation, although it did not happen on that date. And even in that case it would be coronary artery disease probably the right coronary artery.

(*PageID##* 89-90). The ALJ later asked Dr. Jilhewar if, "based on objective evidence alone," he agrees or disagrees with the State agency's opinion that Plaintiff could perform light work. (*PageID#* 92). Dr. Jilhewar testified "I completely agree . . . ." (*Id.*).

Although the ALJ concluded that Dr. Jilhewar testified that he "fully agreed with the State agency's assessment that the claimant is capable of activities at the light exertional level," a review of Dr. Jilhewar's testimony indicates such a conclusion is not correct. Dr. Jilhewar stated that he "completely agree[s]" with the state agency's opinion,

14

but only in response to the ALJ's question as to whether he agrees with the State agency's assessment "**based on objective evidence alone.**" (*PageID#* 92) (emphasis added). Thus, Dr. Jilhewar's agreement with the State agency's assessment was formulated only upon consideration of the objective evidence. Dr. Jilhewar was therefore not permitted to consider Plaintiff's subjective symptoms, such as pain, when responding to this hypothetical posed by the ALJ. When previously permitted by the ALJ to consider Plaintiff's subjective complaints of pain, however, Dr. Jilhewar testified that he believed Plaintiff would, in fact, be limited to sedentary work. (*PageID#* 89) ("[I]f [we] will accept the symptom of pain, not the impairment, and a solution of the narcotic medication taking first, then [Plaintiff] will be limited to so-called sedentary capacity, not meeting or equaling the listing 1.04.").

Considering the ALJ specifically found that Plaintiff "experience[s] some pain and limitations as a result of his conditions," (*PageID#* 48), it was improper for the ALJ to thereafter rely upon testimony provided by Dr. Jilhewar in response to questions in which he was specifically precluded by the ALJ from considering anything other than objective evidence. The ALJ's reliance on such inaccurately summarized testimony is misplaced, her decision is not supported by substantial evidence, and it must be reversed.[2]

## VI.    Remand For Benefits Is Warranted

---

[2] In light of the above review, and the resulting need for remand of this case, an in-depth analysis of Plaintiff's remaining contentions and evaluation is unwarranted at this time.

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).

Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

Plaintiff argues that "[c]onsidering his age, education, and work experience, [he] would be disabled under the Commissioner's Medical Vocational guidelines upon a limitation to sedentary work." (*PageID#* 410). "An ALJ is to employ the grids, found at 20 C.F.R. Part 404, Subpart P, Appendix 2, at the fifth step of the disability determination, after the claimant has been found not to meet the requirements of a listed impairment but to nevertheless be incapable of performing past relevant work." *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

The ALJ afforded "great weight" to the testimony of the medical expert, Dr. Jilhewar. The ALJ noted Dr. Jilhewar's testimony "is consistent with the medical evidence" and that he "cited to objective imaging in the treatment notes and supported his opinion with clinical findings and specific references. (Ex. 1F-5F; 8F-20F)." (*PageID#*

16

53).  Although the ALJ's inaccurate characterization of Dr. Jilhewar's testimony might appear to indicate the medical expert unconditionally agreed with the State agency's assessment, such is not the case.  As previously discussed, Dr. Jilhewar only "fully agreed" with the State agency's assessment when, pursuant to the ALJ's hypothetical, he was solely limited to consideration of the "objective evidence alone."  (*PageID#* 92).  When permitted to consider all the evidence, including Plaintiff's symptoms of pain, Dr. Jilhewar concluded that Plaintiff would, in fact, be limited to sedentary work.  (*PageID#* 106).  For the same reasons provided by the ALJ for affording Dr. Jilhewar's opinion "great weight," the Court concludes his testimony provides strong evidence that Plaintiff is limited to sedentary work, and contrary evidence is weak.

     Plaintiff was 53 years old at the time of his hearing before the ALJ.  This defined him as a "person closely approaching advanced age" for purposes of resolving his DIB claim.  *See* 20 C.F.R. § 404.1563(e); *see also PageID##* 53, 143.  He has a high school education, (*PageID##* 68, 48), and worked as an auto-mechanic and heavy auto-mechanic.  (*PageID##* 53, 104).  The evidence also establishes he is unable to perform his previous work.  (*PageID#* 53).  The VE classified his previous jobs as skilled, performed at medium and heavy exertion levels.  (*PageID##* 104-05).  The VE also testified that neither of his previous positions involved skills which would be transferrable to sedentary work.  (*PageID#* 106).  Accordingly, as strong evidence indicates that Plaintiff is limited to sedentary work (while contrary evidence is weak), and he is a "person closely approaching advanced age," is a high school graduate (which does not provide for direct

17

entry into skilled work), and has skills that are not transferable, Grid Rule 201.14 establishes that Plaintiff is under a disability.

A remand of this case to the Social Security Administration for an award of benefits is therefore warranted.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. Plaintiff's case be **REMANDED** to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for payment of Disability Insurance Benefits consistent with the Social Security Act; and,

3. The case be terminated on the docket of this Court.

January 28, 2014

                s/Sharon L. Ovington
                Sharon L. Ovington
              Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).